UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

United States of America,

    Plaintiff,

v.                                            Case No. 3:16-00177

Ronald Edward Strickland,          Judge Sean F. Cox

    Defendant.
_____/

## MEMORANDUM OPINION

On June 20, 2017, Defendant pleaded guilty to transporting and harboring an illegal alien, 8 U.S.C. § 1324(a)(1)(A)(ii). The Court held a sentencing hearing on October 17, 2017. At the hearing, the Court heard argument on Defendant's various objections to the Presentence Report. The Court adjourned the hearing until November 29, 2017 and now issues a written decision regarding the objections. For the reasons below, the Court overrules Defendant's objections and concludes that both the dangerousness enhancement, U.S.S.G. § 2L1.1(b)(6), and the obstruction of justice enhancement, U.S.S.G. § 3C1.1, apply in this case.

## BACKGROUND

On August 31, 2016, Defendant was indicted on one count of transporting and harboring an illegal alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) (Doc. # 18). On June 20, 2017, Defendant pleaded guilty as charged. Probation services has prepared a Presentence Investigation Report. Defendant has raised several objections to the report (Doc. # 57) and the Government has responded (Doc. # 60). Specifically, Defendant objects to the inclusion of paragraphs 6 through 14 of the report, the application of the dangerousness enhancement under

1

U.S.S.G. § 2L1.1(b)(6), and the application of the obstruction of justice enhancement under U.S.S.G. § 3C1.1.[1]

Having heard and observed the witnesses who testified at the hearing, considering the arguments presented by counsel, and applying the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT

On July 22, 2016, Homeland Security Investigations received an anonymous tip that Defendant Ronald Strickland had smuggled a young woman, 22-year-old Rosa Osorto Osorto, into the United States from Honduras. That same day, Homeland Security agents visited Defendant's house. Defendant invited the agents into the house and the agents verified that Osorto Osorto was located there. Defendant admitted that he had traveled to Houston, Texas to pick up Osorto Osorto after she called him to advise that she had arrived in the United States. The agents administratively detained Osorto Osorto.

Defendant had been frequently traveling to Honduras for many years, ostensibly for missionary work. While in Honduras, he frequently became sexually involved with young women that he met there. To maintain these relationships, Defendant would lavish the girls with money and gifts. Over the past ten years, Defendant has wired a substantial sum of money to these women and others in Honduras.

---

[1] Defendant also objects that the Presentence Report omits that Defendant spent 37 days in jail prior to release. The Court finds that page 1 of the report addresses the exact dates Defendant was arrested and released.

[2] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

Defendant met Osorto Osorto approximately five years ago during a visit to Honduras. They began a relationship when Osorto Osorto was approximately 16 or 17 years old and became sexually involved when she was 19. While in the United States, Defendant would send Osorto Osorto and her family money, sending about $6,652 to Osorto Osorto and $3,398 to her sister.

Defendant began to attempt to facilitate Osorto Osorto's entry into the United States. Defendant hired smugglers to help transport Osorto Osorto from Honduras to the United States and would communicate with them directly through the cellular application "WhatsApp." Osorto Osorto unsuccessfully attempted to enter the United States on two occasions. During the first attempt, she was abandoned by a smuggler in Mexico.

Defendant paid about $8,000 to facilitate Osorto Osorto's most recent attempt to enter the United States. During her journey, Defendant remained in contact with Osorto Osorto and the smugglers transporting her. He warned Osorto Osorto that one location where she had stopped, Nuevo Laredo, was very dangerous. Osorto Osorto informed Defendant that she would be walking five to six hours through the desert. She also told him that she was under the control of Los Zetas, a Mexican gang, and that women in her group had been sexually molested and robbed.

Osorto Osorto encountered numerous dangers on her journey. Some of the smugglers transporting her were armed. At one point, she had to jump from a moving train and roll down a large hill to continue following the smugglers. The smugglers eventually sent Osorto Osorto and her group into the desert alone, instructing them to meet up with other smugglers on the way. Osorto Osorto's group became lost in the desert without sufficient food or water for a couple of

days.  Nevertheless, Osorto Osorto eventually made it into the United States.  She was detained shortly after she arrived in Tennessee with Defendant.

Following the discovery and detention of Osorto Osorto, Homeland Security agents executed a search warrant at Defendant's residence.  During the search, they recovered a document purportedly from the "Legal Courier Dispatch of Tennessee," an entity that does not exist.  The document included Defendant's address and phone number and instructed corrections officers to allow the named courier, Ronald E. Strickland, visitation access to Osorto-Osorto.  The document also demanded any and all documents and papers concerning Osorto Osorto.  There is no indication that Defendant ever sent or otherwise attempted to use this document.

In August, Defendant placed a recorded phone call from jail in which he advised his brother to retrieve a computer that he had dropped off at a computer shop.  Defendant dropped off the computer the day after the search warrant was executed at his home.  Defendant asked his brother to ensure that the request he made was completed.  Defendant's claim ticket, which contains his name and address, indicated that Defendant requested that the computer be reset to factory settings.  The request was completed and Homeland Security agents were unable to retrieve any data from the computer.

## CONCLUSIONS OF LAW

### I. Paragraphs 6 Through 14 of the Presentence Report

Defendant objects to the inclusion of paragraphs 6 through 14 of the Presentence Report as being factually incorrect.  The Court is permitted to rely on the facts in the Presentence Report at sentencing unless there is a "dispute."  *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015), citing Fed. R. Crim. P. 32(i)(3).  "To create a factual dispute, a defendant must produce

some evidence that calls the reliability or correctness of the alleged facts into question–a burden of production that requires more than a bare denial." *Id*. (quotation marks omitted).

Defendant raises only a general objection to the entirety of the Presentence Report's factual recitation and does not identify precisely which facts are in dispute. Therefore, Defendant has not met his burden to produce "some evidence" contradicting the report. *Id*. Moreover, Defendant acknowledged at the hearing that if the Court accepted paragraphs 6 through 14 of the report, he would not object. Therefore, the Court rejects Defendant's objection to the factual recitation in the Presentence Report and accepts those paragraphs as written.

## II. Creating a Substantial Risk of Death or Serious Bodily Injury

Next, Defendant objects to the recommended U.S.S.G. § 2L1.1(b)(6) enhancement, which applies where the "offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person . . . ." Defendant need not have created this risk directly. "[A] defendant is responsible for 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,' whether or not that activity is charged as a conspiracy." *United States v. Kennedy*, 714 F.3d 951, 960-61 (6th Cir. 2013), quoting U.S.S.G. § 1B1.3(a)(1)(B). The Court must make particularized findings regarding the scope of the agreement and the foreseeability of the conduct of others. *Id*. at 161.

Defendant argues that the dangerousness enhancement cannot apply because he was charged with transporting an alien *within* the United States. He also contends that the record does not establish that Osorto Osorto was transported into the United States by inherently dangerous means or that he had knowledge or control over those means. The Court disagrees.

Under the Guidelines, Defendant is responsible for more than just the act charged, i.e.,

5

transporting an alien within the United States. He is also responsible for the reasonably foreseeable acts of others in furtherance of a jointly undertaken criminal activity. Here, that activity was the transport of Osorto Osorto, an illegal alien, from Honduras to Defendant's home in the United States. Defendant was directly responsible for facilitating Osorto Osorto's transport and entry into the United States. He paid a substantial sum to finance Osorto Osorto's travel and was in direct contact with her and the smugglers responsible for transporting her. Defendant helped coordinate logistics and picked Osorto Osorto up when she arrived in Houston. Based on these facts, the Court finds that Defendant had a knowing and continuing involvement in Osorto Osorto's attempt to illegally enter the United States. Defendant is therefore responsible for the reasonably foreseeable acts and omissions of those individuals, such as the smugglers, who were jointly aiding in this endeavor.

Osorto Osorto was confronted with many dangers during her trip to the United States. She was under the control of armed smugglers and gang members. Women in her group were sexually molested and robbed. She had to jump from a moving train. Smugglers also sent Osorto Osorto's group into the desert alone, where they were lost for two days without food or water. These occurrences were all reasonably foreseeable to Defendant. Defendant knew that certain locations where Osorto Osorto traveled were dangerous. He was familiar with who she traveling with. He knew that she would be trekking through the desert in the summer. And he was aware of the dangers faced by Osorto Osorto during her previous attempts to enter the United States, such as when she was abandoned by a smuggler in Mexico.

Because the perils of Osorto Osorto's journey were reasonably foreseeable to Defendant, the remaining question is whether the actions of the individuals smuggling Osorto Osorto, whose

conduct Defendant is responsible for, intentionally or recklessly created a substantial risk of death or bodily injury to Osorto Osorto. The applicability of this enhancement appears to be a matter of first impression in the Sixth Circuit. The Fifth Circuit has, however, addressed this issue and the Court finds those opinions instructive. In *United States v. Chapa*, 362 Fed. App'x. 411, 413 (5th Cir. 2010), the Court held that the enhancement applied where aliens trekked over a long distance, for 36 hours, in August, through the South Texas brush while running out of food and portable water. The Court held that the smugglers' conduct in leading the group "was reckless under any common definition of the term." *Id*. Likewise, the Fifth Circuit has also applied the enhancement where the aliens trekked through the South Texas brush in 100-degree temperatures with insufficient water and food. *United States v. Garcia-Guerrero*, 313 F.3d 892, 897 (5th Cir. 2002).

Here, Osorto Osorto and her group were lost for two days in the desert, in July, without food or water. She had to jump from a moving train. She was transported by armed smugglers and gang members. Other members of her group were sexually molested and robbed. These circumstances posed "inherently dangerous risks" to Osorto Osorto and the other aliens being transported, *see id*. at 896, and constitute reckless endangerment. Therefore, the Court finds that the § 2L1.1(b)(6) enhancement applies.

### III. Obstruction of Justice

The presentence report also recommends applying the U.S.S.G. § 3C1.1 enhancement, which provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any

7

relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

The Government argues Defendant obstructed justice by creating the legal courier letter and by resetting his computer to factory settings.

The first asserted ground for applying the obstruction of justice enhancement is Defendant's production of the falsified legal courier document. The Presentence Report recommends applying the enhancement pursuant to U.S.S.G. § 3C1.1, App. Note 4(A), which states that obstructive conduct includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so."

Because there is no evidence of threats or intimidation, the relevant question is whether the act of creating the legal courier letter constitutes unlawfully influencing a witness or attempting to do so. Here, the Government has only shown that the letter existed and was likely written by Defendant. There is no evidence that the letter was delivered or that Defendant otherwise attempted to use it. Absent such a showing, the Court cannot conclude that Defendant unlawfully influenced a witness.

The Court also declines to find that the act of creating the letter, by itself, constitutes an attempt to influence a witness. Cases from the Sixth Circuit applying this enhancement involve instances where letters or statements were actually delivered or made directly to witnesses or third parties. *See, e.g., United States v. Talley*, 443 Fed. App'x. 968, 972 (6th Cir. 2011); *United States v. Roche*, 321 F.3d 607, 611 (6th Cir. 2003); *United States v. Brown*, 237 F.3d 625, 627 (6th Cir. 2001); *United States v. Hoffman*, 982 F.2d 187, 192 (6th Cir. 1992). There is no evidence here that Defendant ever delivered the letter, attempted to do so, or otherwise attempted to use the letter to influence a potential witness. Accordingly, the Court declines to find that

8

Defendant's creation of the legal courier letter amounts to obstruction of justice.

Defendant's decision to reset his computer to factory settings is another matter. Defendant called his brother to advise him to retrieve the computer that he had dropped off at a computer shop and to ensure that the request that he made was completed. The claim ticket from the transaction indicates that Defendant requested that the computer be reset to factory settings. Defendant made this request on July 28, 2016, six days after Homeland Security agents discovered Osorto Osorto and one day after the search of his residence. When Homeland Security agents retrieved the computer, the request had been completed and they were unable to retrieve any data.

Obstructive conduct includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." U.S.S.G. § 3C1.1, App. Note 4(D). Defendant was well aware he was under investigation when he sought to have a computer restored to factory settings. That he chose to do so the day after government agents searched his home raises a strong inference that he did so with the intent to destroy or conceal evidence. Further, the materiality of any evidence on the computer may be inferred from Defendant's intent to interfere with the investigation. *See United States v. Lewis*, 444 Fed. App'x, 882, 885 (6th Cir. 2011) ("The relevant [materiality] inquiry is the defendant's intent, not whether his actions actually changed the outcome of the investigation or prosecution."); *United States v. Perry*, 991 F.2d 304, 312 (6th Cir. 1993) (stating conduct does not come within the purview of § 3C1.1 "without at least a minimal showing by the government that it was done with the purpose of interfering with investigation or prosecution of the crime."). Otherwise, Defendant would benefit from his

success in destroying any potentially incriminating (and material) evidence from his computer. The Court will not reward Defendant's wrongdoing. Therefore, the Court finds that the § 3C1.1 enhancement applies because Defendant obstructed justice by destroying evidence that is material to an official investigation.

### IV. Excluded Witness Testimony

At the hearing, the Government sought to introduce the testimony of Herardo Ernesto Sanchez Perdomo. The Government proffered that Perdomo would testify about prior rape allegations against Defendant in Honduras and Defendant's practice of traveling to Honduras to have sex for money. The Government argued that the evidence was relevant to Defendant's history and characteristics, which is a factor the Court must consider when sentencing Defendant. 18 U.S.C. § 3553(a)(1).

The Court has wide discretion at sentencing. *United States v. Tucker*, 404 U.S. 443, 446 (1972). While there is very little limitation on the information the Court may consider, *id.*, this wide latitude does not preclude the Court from exercising its discretion in determining what evidence to consider, or not, when issuing a sentence. At the hearing, the Government introduced ample evidence regarding the nature and circumstances of the offense and Defendant's history and characteristics. Based on the Government's offer of proof, the Court finds that Perdomo's testimony, though perhaps relevant, would be unnecessarily cumulative and would not assist the Court in making a sentencing determination. Therefore, as stated at the hearing, the Court declines to allow the Government to introduce Perdomo's testimony.

### CONCLUSION

For the reasons above, the Court overrules Defendant's objections to paragraphs 6

through 14 of the presentence report and to the application of the enhancements for dangerousness and obstruction of justice. The Court will apply the latter two enhancements when determining Defendant's sentencing guidelines. Finally, having received ample evidence as to Defendant's history and characteristics, the Court finds that the testimony of Perdomo would be cumulative and its unnecessary to the Court's ultimate sentencing determination.

s/Sean F. Cox
Sean F. Cox
United States District Judge
Sitting by Special Designation

Dated: November 17, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 17, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager